UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LISA CRAIG, individually, and as
Executrix and Personal Representative of the
Estate of MARK WILEY LANE, and LISA : MEMORANDUM AND
CRAIG, as Parent and Natural Guardian of : ORDER
TREVOR LANE, : 12-CV-4793 (WFK) (VMS)

              Plaintiffs,
  -against-

SANDALS RESORTS INTERNATIONAL,
THE VERANDA HOTEL, FAEZ LTD,
GRACE BAY RESORTS, VERANDA
MANAGEMENT SERVICES, LTD,

             Defendants.
------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge**

In March 2012, Mark Wiley Lane was snorkeling with his family in the Turks & Caicos Islands when he was killed in a speedboat accident. Lisa Craig, individually, as executrix and personal representative of Lane's estate, and as the parent and natural guardian of Trevor Lane (collectively, "Plaintiffs"), now bring this action against Sandals Resorts International ("Sandals"), the Veranda Hotel ("Veranda"), Faez, Ltd., Grace Bay Resorts, and Veranda Management Services, Ltd. ("VMS"), alleging common law causes of action for: (1) wrongful death, (2) conscious pain and suffering, (3) negligent infliction of emotional distress ("NIED"), and (4) loss of consortium.

Defendant Sandals brings a motion to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Because Plaintiff has not established an agency relationship sufficient to tie Sandals to this case, the Court grants Sandals's motion and dismisses Plaintiffs' claims as to Sandals.

Defendants VMS, Veranda, Faez, and Grace Bay (the "Veranda Defendants") move to dismiss on several alternate grounds. They argue that *forum non conveniens* compels dismissal of the action; that the Court lacks personal jurisdiction over the Defendants; and that Plaintiffs have failed to state a claim because Defendants had no duty to warn Mr. Lane. Because the facts of this case center in the Turks & Caicos Islands ("TCI"), the Court grants the Veranda Defendants' motion as to *forum non conveniens*.

I.  **Factual Background**

The following facts are taken from the Second Amended Complaint. Dkt. 52. ("Compl."). For purposes of deciding Defendants' motions to dismiss for failure to state a claim, the Court assumes these facts to be true and construes them in the light most favorable to Plaintiffs, the non-moving parties. *See Ilarraza v. Medtronic, Inc.*, 677 F. Supp. 2d 582, 584 (E.D.N.Y. 2009) (Wexler, J.).

Mark Lane and his wife, Plaintiff Lisa Craig, planned a vacation to the Turks & Caicos Islands ("TCI") with their four young sons in late March 2012. Compl. at ¶ 45. The Lane family traveled to TCI on March 23, 2012, and checked in to the Veranda Hotel later that afternoon. *Id.* at ¶ 46. The next morning, the Lane family allegedly approached a Veranda Hotel employee and asked for information on an appropriate place for the family to snorkel together. *Id.* at ¶ 47. In response, Plaintiffs claim, the Veranda Hotel employee directed the Lane family to an area immediately adjacent to the Veranda Hotel, known as Coral Garden, Lower Bight Providenciales ("the Accident Location"). *Id.* In addition, the Veranda Hotel employee provided the Lane family with snorkeling equipment and instructed them to swim out past a series of yellow buoys at or near the Accident Location in order to snorkel. *Id.* at ¶¶ 48–49.

Plaintiffs allege that the Veranda Hotel, through its agents and employees, knew or should have known of dangerous boat traffic in the vicinity of the Accident Location due to previous accidents having occurred in that area. *Id.* at ¶ 50. For instance, a boat accident purportedly occurred near the Accident Location in 2006, causing the death of a swimmer. *Id.* at ¶ 53. Nevertheless, no employee of the Veranda Hotel warned Mr. Lane or his family of the dangers related to boat traffic in the Accident Location area, despite the fact that the Lane family

had little, if any, opportunity to become aware of boat traffic in the vicinity of the Accident Location. *Id.* at ¶¶ 51–52.

The Lane family allegedly set out on their snorkeling excursion at approximately 2:30 PM on March 24, 2012. *Id.* at ¶ 55. After a short walk from the Veranda Hotel, Lane and his eight-year-old son, Trevor Lane, entered the water, using the snorkeling gear provided by the Veranda Hotel employee, and swam past the yellow buoys near the Accident Location. *Id.* at ¶¶ 56–57.

Around the same time as the Lane family set out on their snorkeling excursion, the neighboring Beaches Resort & Spa ("Beaches"), which is wholly owned by Sandals, purportedly sent a group of its guests seaward on an inner-tubing excursion. *Id.* at ¶¶58. This inner-tubing excursion, which Plaintiffs claim was arranged by Beaches employees at the Beaches watersports desk, involved Beaches hotel guests being towed in an inner-tube behind a speedboat traveling close to the shoreline at a high speed. *Id.* at ¶¶ 59–60. The speedboat was captained by non-party Sugar Ray Alexander Smith ("Smith"), who was neither a Sandals nor a Beaches employee. *Id.* at ¶ 61.

Beaches is an "all-inclusive" resort, meaning that meals, beverages, and the services of Beaches agents are either included in the guest's flat fee or charged to the guest's room. *Id.* at ¶¶ 72–74. Thus, the Beaches website instructs guests they will not need cash on the premises and that "the purchase of optional services from the resort outlets will be done by signing all charges to the guest's room folio." *Id.* at ¶ 73. Beaches made the arrangements for its guests to participate in the inner-tubing speedboat excursion led by Mr. Smith, but it did not provide those guests with information distinguishing the services of Mr. Smith from those of full-time Beaches employees. *Id.* at ¶¶ 75–76.

At approximately 2:45 PM on March 24, 2012, the speedboat driven by Smith violently and suddenly struck Lane, causing severe traumatic injuries. *Id.* at ¶ 62. Lane perceived the impending collision, allegedly causing pre-impact terror, and pushed his son Trevor Lane out of the speedboat's path moments before impact. *Id.* at ¶ 63. Bystanders helped Lane to the shore, and emergency medical services then transported Lane by ambulance to Cheshire Hill Medical Centre. *Id.* at ¶¶ 64–65. During this period of time, Lane had a heartbeat and faded in and out of consciousness. *Id.* at ¶ 66. After arriving at Cheshire Mill Medical Centre, Lane was pronounced dead at 4:50 PM. *Id.* at ¶¶ 67–68. An autopsy determined the cause of death to be massive blunt force trauma to the left arm, head, and neck. *Id.* at ¶ 69.

## II. Procedural History

Plaintiffs filed their original complaint against Defendants on September 24, 2012. Dkt. 1. Following a pre-motion conference held before this Court on March 1, 2013, Plaintiffs filed a First Amended Complaint on March 8, 2013, in large part to allege additional facts regarding the existence or absence of an agency relationship between Sandals and Mr. Smith. *See* Minute Entry of 3/1/2013; Compl. at ¶¶ 64–77. Sandals moved to dismiss on May 10, 2013. Dkt. 22. Plaintiffs then requested leave to file a Second Amended Complaint in order to add Veranda Management Services, Ltd., as a Defendant. Dkt. 37-1, at 1. The Court granted Plaintiffs permission to file the Second Amended Complaint on March 12, 2014, and instructed the parties that they were free to re-file their motions to dismiss against the Second Amended Complaint. *See* Dkt. 56. On March 31, 2014, Sandals renewed and adopted its previously filed motion to dismiss. Dkt. 58. Sandals also filed a supplemental memorandum of law addressing *forum non conveniens* on September 8, 2014. Dkt. 83.

On August 12, 2013, the Veranda Defendants filed the briefing papers regarding their "Motion to Dismiss for Failure to State a Claim and lack of personal jurisdiction and *forum non conveniens*." Dkts. 30-34. On September 8, 2014, the Veranda Defendants renewed their briefing papers as to the Second Amended Complaint. Dkts. 68, 69, 70 ("Veranda Memo."), 71 ("Opp. to Veranda"), 82 ("Veranda Reply").

## DISCUSSION

### I. Sandals's Motion to Dismiss

#### A. Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6), each claim must set forth sufficient factual allegations, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). In applying this standard, the Court is guided by "[t]wo working principles." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). First, the Court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, the Court need not credit "legal conclusions" in a claim or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 556 U.S. at 678) (internal quotations and alteration omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## B. Application

Sandals's primary argument is that Smith was not its agent, and thus, Sandals has no connection to this litigation. *See* Dkt. 58-1 at 4-16 ("Memo.") at 3.[1] Because this issue determines whether Sandals should remain a party to this action, the Court addresses it first.

### *1. Agency*

"It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (collecting cases). Here, because Plaintiffs do not allege that Smith was an employee of Sandals, the threshold issue is whether Smith was acting as Sandals's agent at the time his boat struck and killed Lane.

Under New York law,[2] to establish an agency relationship between Smith and Sandals and thus hold Sandals vicariously liable for Smith's wrongdoing, Plaintiffs must plead sufficient facts to show Smith had either actual or apparent authority to act on Sandals's behalf. *See Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010). At the outset, the Court notes that the Second Amended Complaint does not allege Plaintiffs had any contact with Sandals whatsoever, much less that they had any beliefs regarding the nature of the relationship between Sandals and Smith. Because no allegations indicate that Sandals communicated with Plaintiffs in a manner that would cause Plaintiffs "to believe that an individual has been

---

[1] Sandals re-filed its memorandum in support of the motion to dismiss and reply thereof in Dkt. 58-1 (Exhibit A: Sandals's Renewed Motion to Dismiss Filings) at 4–16, 17–30 ("Reply"). The Court assumes that Plaintiffs intended to renew their initial Opposition to that memorandum. *See* Dkt. 24. ("Opp.").

[2] The parties do not address the choice of law explicitly, but both cite to New York law. Accordingly, the Court utilizes New York law to decide the agency question. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) ("The parties' briefs assume that New York substantive law governs the issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law.").

authorized to act on [Sandals's] behalf," Plaintiffs cannot argue that Smith acted as Sandals's agent by virtue of apparent authority. *See id.* at 328 (citations omitted). Therefore, to establish Smith was an agent of Sandals, Plaintiffs must proceed on a theory of actual authority.

*2. Actual Authority*

"Actual authority 'is the power of the agent to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestations to him.'" *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003) (citation omitted); *see also Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 486 (S.D.N.Y. 2001) (Cote, J.) ("Actual authority 'arises from a manifestation [of consent] from principal to agent.'") (citation omitted). "The consent necessary for actual authority may be 'either express or implied from the parties' words and conduct as construed in light of the surrounding circumstances.'" *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 89 (S.D.N.Y. 2010) (Baer, J.) (citation omitted). "Thus, to establish actual agency, a plaintiff must demonstrate the following elements: (1) manifestation by the principal that the agent shall act for him; (2) the agent accepted the undertaking; and (3) an understanding between the parties that the principal is to be in control of the undertaking." *Id.*; *see also In re Shulman Trasnsp. Enters., Inc.*, 744 F.2d 293, 295 (2d Cir. 1984) (an essential element of an agency relationship is that "the agent acts subject to the principal's direction and control"). "Importantly, whether [actual agency] exists depends upon the actual interactions of the putative agent and principal and not on the perception a third party may have of the relationship." *STMicroelec. v. Credit Suisse Grp.*, 775 F. Supp. 2d 525, 540 (E.D.N.Y. 2011) (Dearie, J.) (quoting *Manchester Equip. Co. v. Am. Way*, 60 F. Supp. 2d 3, 8 (E.D.N.Y. 1999) (Wexler, J.)).

"Commonly, an outsider will not be privy to the details of what conversation or conduct took place between a principal and the agent." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 344 (S.D.N.Y. 2010) (Kaplan, J.). Thus, "[t]o adequately allege an actual agency relationship, a plaintiff need only allege facts sufficient to support a reasonable inference of actual authority, and its pleadings may rely upon facts that would constitute circumstantial evidence of authority." *Skanga Energy & Marine Ltd. v. Arevenca S.A.*, 875 F. Supp. 2d 264, 269 (S.D.N.Y. 2012) (Cote, J.); *see also Amusement Indus.*, 693 F. Supp. 2d at 344 ("[A] plaintiff need only raise a sufficient inference that some sort of agency relationship existed between the purported principal and agent.") (citations and internal editing omitted).

Plaintiffs point to two sets of allegations to support an inference of actual authority. *First*, Plaintiffs allege that Sandals "sent" its guests on the inner-tubing excursion, which had been arranged by Sandals employees, but gave no indication to those guests that the services of Smith were not those of a full-time employee. *Id.* at 10–11. Plaintiffs also claim that Sandals "held Mr. Smith out as its agent for the purpose of taking [its] guests on inner-tubing excursions." *Id.* at 11. However, "whether [actual agency] exists depends upon the actual interactions of the putative agent and principal and not on the perception a third party may have of the relationship." *STMicroelec.*, 775 F. Supp. 2d at 540. Thus, Plaintiffs' first set of arguments—that Sandals represented to its guests that Smith was its agent or otherwise failed to distinguish Smith's services from those of Sandals employees—are irrelevant to the issue of actual agency.

*Second*, Plaintiffs allege the charges for Smith's speedboat fee were presumably included in resort guests' flat fee or charged to their room folios, given the fact that Sandals is an "all-inclusive resort." Opp. at 10. However, this allegation is not enough to support a reasonable

inference that Smith had actual authority to act on behalf of Sandals. *See McEvaddy v. City Univ. of New York*, 220 A.D.2d 319, 319 (1st Dep't 1995) (financing of student paper through student activity fees dispensed by defendant did not render school paper an agent of defendant); *see also Iqbal*, 556 U.S. at 678. In particular, Plaintiffs have not adequately pled that the fees are evidence of Sandal's *control* of Mr. Smith, which is "an essential element of an agency relationship" under New York law. *Mouawad Nat. Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414, 422 (S.D.N.Y. 2007) (Holwell, J.) (citations omitted). "The essence of control in an agency sense is in the *necessity* of the consent of the principal on a given matter." *Id.* (citation omitted) (emphasis in original). Plaintiffs argue that Sandals controlled Smith by pointing to various alleged negligent failures of Sandals to adequately supervise Smith. For instance, Plaintiffs allege Sandals "negligently failed to investigate or vet the skill, knowledge, experience, safety credentials and/or qualifications of its agents, including Mr. Smith, charged with taking [Sandals] guests on such seaward excursions." Compl. at ¶ 78. However, Plaintiffs' argument sheds no light on the agency inquiry: by asserting that Sandals failed to adequately control Smith, Plaintiffs both assume and attempt to prove that Smith was subject to Sandals's control in the first place. Plaintiffs have not alleged any facts suggesting that Smith required Sandals's consent to perform any particular act, much less captain his boat or take passengers out on excursions. This deficiency undermines any agency claim against Sandals.

Plaintiffs argue that the payment of fees established agency by relying on *Maurillo v. Park Slope U-Haul*, 194 A.D.2d 142 (2d Dep't 1993), a case that took into account "the fact that the fees for the rental of the [agent's] vehicle . . . were charged to [the principal's] credit card." Opp. at 10. Yet the court in *Maurillo* did not rest its holding on this fact alone. In *Maurillo*, the principal asked his three sons to move certain furniture from their family home in Brooklyn to

the family's summer home on Shelter Island. 194 A.D.2d at 144. In doing so, the principal "specifically indicated that [the agent] should rent a U-Haul vehicle for this purpose," "provided a credit card in his name to pay for the vehicle's rental," and "pointed out several things" that were to be transported. *Id.* Based on these allegations, the court in *Maurillo* found the agent "was acting upon the request of his father, at the father's direction, and for the father's benefit." *Id.* at 147. Thus, while the fact that the principal in *Maurillo* paid for the rental vehicle used by the agent was relevant to the court's holding that there was a triable issue of fact "sufficient to defeat the [principal's] motion to dismiss," it was but one of several facts. *Id.* The totality of facts, and not that fact alone, led the court to deny the motion to dismiss. *Id.* Here, by contrast, Plaintiffs rest solely on the payment of the fee. This alone cannot state a plausible claim of actual agency. *See In re Parmalat Secs. Litig.*, 501 F. Supp. 2d 560, 589 (S.D.N.Y. 2007) (Kaplan, J.) ("The fact that one corporation finances some of the operations of another does not necessarily establish an agency relationship.").

Further, the other cases cited by Plaintiffs involved explicit oral or written representations from which a reasonable inference of an agency relationship could be drawn. In *Skanga Energy & Marine Ltd. v. Arevenca S.A.*, for example, the principal "assured [the plaintiff] that it was dealing with [the principal] through [the principal's] authorized agents and confirmed all representations of agency made by [the purported agent]." 875 F. Supp. 2d at 270. After the agent sent the plaintiff documents relating to a transaction binding both actors, the principal confirmed the authenticity and origin of the documents. *Id.* The remaining cited cases present similar factual patterns. *See Amusement Indus.*, 693 F. Supp. 2d at 345 (actual authority sufficiently pled where, *inter alia*, agent stated to plaintiff that he had been retained by defendants to act on their behalf, a retainer letter existed between agent and defendants, and a

defendant directed plaintiff to negotiate with agent); *Commercial Fin. Servs., Inc. v. Great Am. Ins. Co. of N.Y.*, 381 F. Supp. 2d 291, 302 (S.D.N.Y. 2005) (Patterson, J.) (sufficient inference of agency where agent countersigned defendant's insurance policies and signed other documents as defendant's "authorized representative" and defendant's website identified agent as one of its agents); *Heredia v. United States*, 887 F. Supp. 77, 81 (S.D.N.Y. 1995) (Cedarbaum, J.) (existence of agency relationship was a triable issue of fact where principal ordered agent, in presence of plaintiff, to help with recruitment, and agent drove principal's car with principal's consent and knowledge during recruitment efforts); *Stewart v. Target Corp.*, No. 11-CV-3557, 2013 WL 1182080, at *4 (E.D.N.Y. Mar. 20, 2013) (Irizarry, J.) (reasonable inference of agency relationship raised where signature page of agreement was signed by agent and stated agent was defendant's employee with authority to act on defendant's behalf).

Having failed to allege any facts raising a reasonable inference of agency, Plaintiffs have not stated a claim for liability against Sandals. The Court therefore grants Sandals's motion to dismiss.

### C. Remaining Arguments

Because Plaintiffs have failed to state a valid claim against Sandals, to the Court does not address Sandals's remaining arguments regarding individual claims or venue. *See* Memo. at 7–9, Suppl. Memo. To the extent that those arguments are applicable to other Defendants, the issues will be addressed in sections III and IV, *infra*.

### D. Leave to Amend

In their Opposition to the initial Motion to Dismiss, Plaintiffs requested leave to amend the First Amended Complaint. Plaintiffs' central argument was that it was prejudiced by Sandals's failure to mention the agency issues in its pre-motion conference letter. Opp. at 13–14.

However, Plaintiffs subsequently requested leave to amend their Complaint for a different reason—namely, to add a new Defendant to the action, Veranda Management Services. At the pre-motion conference to amend the Complaint, Plaintiffs made no effort to renew its agency arguments. After being granted leave to amend to add the Defendant, Plaintiffs filed their Second Amended Complaint, which made no changes to Plaintiffs' claims against Sandals.

Plaintiffs can no longer claim that they lack notice of the deficiencies in their agency allegations. Nonetheless, Plaintiffs have failed to point to any additional substantive allegations that they would bring should they be granted leave to amend. At this stage, Plaintiffs have amended their Complaint three times, and they have still failed to sufficiently plead agency. Because it appears that Plaintiffs' claims against Sandals are futile and an additional attempt to amend would be ineffective, Plaintiff is denied leave to amend as to Sandals. *See Benard v. Netegrity, Inc.*, 00-CV-3001, 2000 WL 1760796, at *2–3 (S.D.N.Y. Nov. 30, 2000) (McKenna, J.) (granting motion to dismiss with prejudice and denying leave to amend as futile).

## II. DISCUSSION – VERANDA DEFENDANTS

The Veranda Defendants move to dismiss based on *forum non conveniens*, personal jurisdiction, and failure to state a claim. The Court first addresses *forum non conveniens*.

### A. *Forum Non Conveniens*

In making a *forum non conveniens* determination, a district court enjoys "wide discretion to which substantial deference is given." *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 27 (2d Cir. 2002). The first step of inquiry in a *forum non conveniens* is to determine what deference is owed a plaintiff's choice of forum. *Id.* at 28. At the second step, the district court "considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." *Norex Petroleum Ltd. v. Access Indus. Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). Finally,

the district court assesses the public and private interest factors. *Id.* Among the public interests are a local interest in having localized controversies decided at home, and the interests in having foreign laws interpreted by a foreign court. *Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 390 (2d Cir. 2011). "Because much of the doctrine's strength derives from its flexibility and each case turns on its own facts, a single factor is rarely dispositive." *DiRienzo*, 294 F.3d at 29. The burden of demonstrating that the plaintiff's chosen forum is not convenient lies on the defendant seeking dismissal. *Id.*

*1. Plaintiff's Choice of Forum*

Assuming that a plaintiff's forum choice was "motivated by legitimate reasons, including the plaintiff's convenience and the ability of a U.S. resident plaintiff to obtain jurisdiction over the defendant," a plaintiff's choice of forum is "generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71, 73 (2d Cir. 2001); *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (cited in *Norex*, 416 F.3d at 155) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). Nonetheless, this weighted standard is not absolute: "this deference is not dispositive and . . . it may be overcome." *Iragorri*, 274 F.3d at 70. "[D]ismissal should not be automatically barred when a plaintiff has filed suit in his home forum[.]" *Id.* at 71. In fact, "the degree of deference given to plaintiff's forum choice [will vary] with the circumstances." *Id.*

Here, the Court must assign deference to Plaintiffs' choice of forum. Plaintiffs live within the Eastern District of New York. Their residence here demonstrates that the reasons for filing the case in this district appear to be legitimate. *See Iragorri*, 274 F.3d at 71.

In addition, Defendants fail to demonstrate that Plaintiffs filed the action in this district for alternate, illegitimate reasons.[3] Defendants argue that "minimal deference" is owed to Plaintiffs' choice of forum because the accident occurred in TCI; the evidence and witnesses exist in the TCI; Defendants would be unable to implead the boat driver in New York; and litigating this case in New York would foreclose the possibility of viewing the accident scene. Dkt. 70 ("Veranda Memo.") at 7. These are valid points. However, they are more appropriately addressed in the following *Gilbert* factors, and they do not undermine the "bona fide connection" between the Plaintiffs and the Eastern District. *Iragorri*, 274 F.3d at 72. Accordingly, the Court finds that Plaintiffs' choice of forum weighs against dismissal.

### 2. Adequacy of the Alternative Forum

"The requirement of an alternative forum is ordinarily satisfied if the defendant is amenable to process in another jurisdiction, except in rare circumstances when the remedy offered by the other forum is clearly unsatisfactory. *Murray v. British Broad. Corp.*, 81 F.3d 287, 292 (2d Cir. 1996) (internal citations and quotations omitted). Neither party disputes that the Turks & Caicos Islands provide an adequate alternative forum for this lawsuit. *See* Veranda Memo. at 5, Dkt. 71 ("Opp. to Veranda") at 11. Accordingly, the Court moves on to balance the private and public interest factors. *See Iragorri*, 274 F.3d at 73.

### 3. Private Factors

The first set of *Gilbert* factors are the private factors, *e.g.*, the convenience of the parties. *See Iragorri*, 274 F.3d at 73-74. These include the relative ease of access to sources of proof;

---

[3] As set forth in the Second Circuit's *Iragorri* decision, "illegitimate" factors can include "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum[.]" 274 F.3d at 72.

availability of compulsory process for attendance of unwilling witnesses, and the cost of procuring the attendance of willing witnesses; the possibility of viewing the premises, if viewing would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. *Gilbert*, 330 U.S. at 508. In weighing these factors, the Court must compare the hardships for Defendants that would occur if the original forum is retained and for Plaintiffs that would result from having to bring the lawsuit again in another country. *Iragorri*, 274 F.3d at 74. Further, the Court must consider the "precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues." *Id.*

In this case, the locus of operative facts, along with the vast majority of evidence and witnesses, are located in the TCI. These include the Defendant hotels, hotel employees, witnesses to the accident, and the emergency team that arrived on the scene after the accident occurred. The majority of documentary evidence is located in TCI, including documents related to the hotels' respective geographic boundaries and the accident itself. Finally, to the extent that viewing the premises would be a part of any trial in this case, the actual accident site itself lies in the TCI.

By comparison, the Eastern District of New York is only convenient for the Plaintiffs and perhaps Plaintiffs' experts. The Court recognizes that documents can be transported, and witnessed may be deposed or transported to the United States. However, these adjustments only slightly mitigate the fact that discovery will be almost entirely concentrated in the TCI. Considering that the bulk of evidence will be located outside of this forum, it appears that significant costs will be incurred in transporting documents and witnesses to the United States.

Moreover, the Court is troubled that this case—which centers around a specific incident in TCI—may have to proceed on deposition testimony from key witnesses, rather than live testimony, at trial. *See Wechsler v. Four Seasons Hotels Ltd.*, 13-CV-8971, 2014 WL 2604109, at *3 (S.D.N.Y. June 10, 2014) (Sullivan, J.) (dismissing where plaintiff would only need to ensure testimony of herself and her physician, while defendant would have to transport all evidence and witnesses to New York or obtain "disfavored forms of testimony such as video deposition"). For example, the driver of the speedboat that struck and killed Lane is not a party to the action, and it does not appear that this Court could compel his attendance at any trial.[4] The same may be true for other eyewitnesses to the accident, who may provide key testimony proving or disproving Plaintiffs' emotional distress claims. Without the live testimony of these various witnesses, some of whom appear to be critical to the determination of this action, justice would be severely hampered. Accordingly, the Court finds that the private factors strongly weigh toward dismissal of this action. *See LaSala v. Bank of Cyprus Pub. Co.*, 510 F. Supp. 2d 246, 258 (S.D.N.Y. 2007) (Haight, J.) ("Where alleged misconduct is centered in the foreign forum and the majority of evidence resides there, dismissal is favored."); *Flynn v. Nat'l Asset Mgmt. Agency*, 13-CV-09035, 2014 WL 3732926, at *6 (S.D.N.Y. July 29, 2014) (Kaplan, J.) (dismissing on *forum non conveniens* after finding that the private factors tipped "quite decidedly" against proceeding in New York court, since evidence and defendants were in Ireland and trial would have to proceed on deposition testimony); *see also In re Herald*, 540 F. App'x 19, 28 (2d Cir. Sept. 16, 2013) (district court correctly found that private factors favored dismissal because vast majority of documentary evidence was located in alternate forum, along with many of the potential witnesses).

---

[4] Plaintiffs argue that this Court can compel witnesses to appear for deposition pursuant to the Hague Convention, Fed. R. Civ. P. 28(b), and 28 U.S.C. § 1781. Opp. to Veranda at 9.

*4. Public Factors*

The final *Gilbert* factors that the Court examines are the public factors. These include the administrative difficulties that occur when litigation is "piled up in congested centers instead of being handled at its origin," the problems of imposing jury duty on a community with no relation to the litigation, the convenience interests of persons affected by the litigation, and the "local interest in having localized controversies decided at home." *Gilbert*, 330 U.S. at 508–09. Further, the Court considers the fact that "[t]here is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Id.* at 509.

Here, both sides have presented competing local interests. Plaintiffs argue that United States courts have a strong interest in providing relief to their citizens, and that the Veranda Defendants took advantage of conducting business in New York by marketing there. Opp. to Veranda at 5–6. By contrast, Defendants argue that because the accident occurred in the TCI; that "TCI has a significant interest in punishing wrongdoers so that it can ensure the safety of its tourists"; and that the TCI "has a strong interest in protecting the reasonable and justifiable expectations of its commercial and resort entities from the uncertainty of financial liability arising out of suits in the United States and other foreign jurisdiction." Veranda Memo. at 10. Further, Defendants argue, this action will require the application of TCI law, not New York law. *Id.*

Given these countervailing factors, it appears that the public interest tips toward dismissal. Plaintiffs have an interest in having their action adjudicated in a convenient forum, and there is merit to the argument that if the Defendants target the New York populace through marketing and advertisement, that populace should adjudicate actions arising out of Defendants'

business. Nonetheless, this action is centered in the TCI, not New York. The accident itself occurred in the TCI, the vast majority of non-party witnesses are located there, and the TCI has a great interest in regulating the conduct of the major industries that are located there. Further, the populace of the TCI has an undeniable interest in ensuring that accidents in their territory are properly remediated and safety issues addressed. As one judge in the Southern District aptly put it:

> Clearly, Turks & Caicos would have an interest in adjudicating a dispute that arose within its borders concerning a multi-million dollar hotel and casino there. Not only does Turks & Caicos have an interest in how business is conducted there, but it would also have an interest in the financial status of a large hotel and casino, given that tourism is the single largest revenue generator for Turks & Caicos.

*Lan Assocs. XVIII, L.P. v. Bank of Nova Scotia*, 96-CV-1022, 1997 WL 458753, at *6 (S.D.N.Y. Aug. 11, 1997) (Keenan, J.). Finally, given that this case involves a tort that occurred in the TCI, it appears that the Court would have to apply TCI law, which weighs heavily toward dismissal. *See Connolly v. Kinay*, No. 11-CV- 606, 2012 WL 1027231, at *10 (S.D.N.Y. Mar. 27, 2012) (Sullivan, J.) (dismissing on *forum conveniens* and finding that "without more information on the intricacies of TCI law, the Court agrees with Defendants that '[t]he parties and this Court . . . lack . . . familiarity with the governing law in this matter'. . . and that this factor weigh[ed] in favor of dismissal"). In sum, the Court finds that the public interest factors weigh toward dismissal.

B. <u>Balancing of Factors</u>

The Court is sympathetic to Plaintiffs' attempts to hold Defendants accountable for the tragic circumstances of this action. However, given the factual circumstances, it is apparent that this action should be dismissed. Though Plaintiffs' choice of forum is given deference, it does not control the determination here. *See Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC,*

81 F.3d 1224, 1232 (2d Cir. 1996) (collecting cases for proposition that "[u]nder certain circumstances an American plaintiff may be required to litigate abroad"); *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d Cir. 2003) ("[T]here is no inflexible rule that protects U.S. citizen or resident plaintiffs from having their causes dismissed for *forum non conveniens*."). The key facts of this action are centered in the TCI, and the strong pull of the private and public factors favoring resolution in the TCI outweighs the deference given to Plaintiffs' selected forum. *See Tel. Sys. Int'l, Inc. v. Network Telecom PLC*, 303 F. Supp. 2d 377, 385 (S.D.N.Y. 2003) (Pauley, J.) ("This Court holds that the presumption in favor of [plaintiff's] choice of forum is overcome because: (1) an adequate alternative forum exists in the [alternate forum]; and (2) both the *Gilbert* private and public interest factors weigh heavily in favor of litigating the dispute there.").[5]

The Court orders this dismissal, however, subject to the Veranda Defendants stipulating not to challenge jurisdiction and process in that forum, and to waiving any statute of limitations defense in that action attributable to the delay between the filing of this case and a reasonable time for refiling the action in the TCI. *See, e.g., Panama Processes, S.A. v. Cities Serv. Co.*, 500 F. Supp. 787, 801 (S.D.N.Y. 1980) *aff'd*, 650 F.2d 408 (2d Cir. 1981) (Haight, J.) (dismissing "on the basis of forum non conveniens, on condition that [defendant] consents to the jurisdiction

---

[5] The Court is mindful of the decision of our colleague in *O'Donnell v. Club Mediterranee S.A.*, 05-CV-610, 2008 WL 794975 (E.D.N.Y. Mar. 24, 2008) (Ross, J.). There, Judge Ross declined to dismiss the personal injury action to the Turks & Caicos Islands. *Id.* at *17–18. Though that case appears factually similar to case at bar, the Court finds that the *O'Donnell* case is in fact distinguishable. Here, in contrast to *O'Donnell*, there are several material witnesses who will be unable to attend trial and whose credibility is critical to the key legal issues of this case. *Cf. O'Donnell*, 2008 WL 794975 at *17 ("Nor have defendants, in the circumstances of this case, demonstrated a need to compel the attendance at trial of the only two witnesses whom they have identified."). These witnesses include Smith and the eyewitnesses to the accident, both of whose testimony will directly affect Plaintiffs' claims arising out of the accident. Accordingly, the Court does not find that *O'Donnell*'s holding is determinative here.

of the Brazilian courts, and, consistent with that consent, contests the issues on the merits."). Further, because the case will be transferred subject to these conditions, the Court will not decide on the Defendants' motions to dismiss for lack of personal jurisdiction here. *See Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 308 (S.D.N.Y. 2000) *aff'd*, 2 F. App'x 109 (2d Cir. 2001) (Buchwald, J.) (electing not to decide defendants' personal jurisdiction motions before dismissing case for *forum non conveniens*).

### III. Conclusion

For the reasons stated above, the Court GRANTS Sandals's Motion to Dismiss, Dkt. 58, and DISMISSES Plaintiffs' claims against Sandals in their entirety. Plaintiffs' request for leave to amend is DENIED. The Court also GRANTS the Veranda Defendants' Motion to Dismiss, Dkt. 68, for *forum non conveniens* subject to the conditions stated above. The Veranda Defendants shall submit the required stipulation within 14 days of this Order.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

Dated: November 18, 2014
Brooklyn, New York